# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORACLE OIL, LLC,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-3674** |
| **EPI CONSULTANTS,**<br>        **Defendant** | **SECTION: "E"** |

## ORDER AND REASONS

On May 1, 2019, the Court issued its Order and Reasons[1] on the Motion *in Limine*[2] filed by Defendant EPI Consultants ("EPI"), seeking to exclude testimony from Plaintiff's expert, Robert McGowen. The Court *sua sponte* reconsiders its Order and Reasons, pursuant to Federal Rule of Civil Procedure 54(b).[3]

## BACKGROUND

Oracle is a company owned solely by Robert "Bob" Brooks.[4] Oracle was the operator of the Lucille Broussard, et al. No. 1 well ("the well") located in Vermillion Parish.[5] Oracle alleges it contracted with EPI for EPI to provide consulting engineering services, on-site supervision, and other services in connection with the well in order to rework the well.[6] Oracle alleges that, in connection with the contracted work, EPI used rusty, scaly pipe and failed to properly inspect or clean the pipe before running it in the

---

[1] R. Doc. 75.
[2] R. Doc. 20.
[3] Pursuant to Rule 54(b), the Court has the authority to modify an interlocutory order. *See United States v. Randa*, 709 F.3d 472, 479 (5th Cir.2013) ("Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order for any reason it deems sufficient.") (internal quotation marks and citation omitted). The Court may exercise this authority *sua sponte*. *See McKethan v. Texas Farm Bureau*, 996F.2d 734, 736 n. 6 (5th Cir. 1993) (approving district court's *sua sponte* reversal of a denial of partial summary judgment); *Stephens v. Fla. Marine Transporters, Inc.*, No. 12-1873, 2013 WL 5236624, at *1 n. 1 (E.D. La. Sept. 16, 2013) (*sua sponte* reconsidering a ruling on a motion *in limine*).
[4] R. Doc. 26-2 at ¶ 1; R. Doc. 42-1 at ¶ 1.
[5] R. Doc. 1-7 at ¶ 2.
[6] *Id.* at ¶ 3.

1

well.[7] Oracle further alleges that EPI set retainers, bridge plugs, and/or pokers near joints in the casing, causing a split in the casing.[8] As a result of EPI's actions, Oracle seeks damages for (1) damage to the well, (2) costs and expenses incurred by Oracle, (3) loss of reserves and revenue, and (4) costs of drilling a replacement well.[9]

To support its damages claim for loss of reserves and revenue, Oracle hired Robert McGowen, a petroleum engineer, to determine the net revenue the well would have generated, had the well commenced production. In his expert report, Mr. McGowen opines the net revenue after production taxes of the well would have been $25,003,325 and the net cash flow after expenses would have been $24,484,899.[10] At deposition, Mr. McGowen estimated Oracle's net revenue after production taxes to be $22,142,255.[11]

On May 1, 2019, the Court denied the Motion *in Limine* to exclude the testimony of Mr. McGowen. The Court reasoned, "[t]he fact that Mr. McGowen does not account for the cost to redrill the well when estimating the net revenue of Oracle's interest in the well does not render his opinion wholly unreliable and inadmissible. Instead, it is appropriate fodder for cross examination."[12] Upon reconsideration, the Court finds Mr. McGowen's testimony irrelevant and, as a result, unhelpful.

## **LEGAL STANDARD**

Federal Rule of Evidence 401 provides, [e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Federal Rule of Evidence 403

---

[7] *Id.* at ¶ 5.
[8] *Id.* at ¶¶ 22-24.
[9] R. Doc. 1-7. Oracle concedes it cannot recover costs associated with reworking the well as it no longer has the leases necessary to enter the land and explore minerals. R. Doc. 91 at 5 n. 5.
[10] R. Doc. 20-5 at 3.
[11] R. Doc. 20-6 at 4.
[12] R. Doc. 75.

provides, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Federal Rule of Evidence 702 permits an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case."[13] Courts, as "gatekeepers," are tasked with making a preliminary assessment of whether the expert's testimony is relevant and reliable.[14] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[15]

## LAW AND ANALYSIS

Oracle hired Mr. McGowen to provide an expert opinion regarding the net revenue the well would have generated for Oracle, had the well commenced production.[16] Mr. McGowen explained he "made an estimate of what [he] deemed to be recoverable hydrocarbons as of April 2008."[17] Mr. McGowen opines the net revenue after production taxes on the well would have been $25,003,325 and the net cash flow after expenses would have been $24,484,899.[18]

---

[13] FED. R. EVID. 702.
[14] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[15] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[16] R. Doc. 20-6 at 2.
[17] R. Doc. 20-6 at 5.
[18] R. Doc. 20-5 at 3.

## I. Damage Models for Loss of a Well

Where property has been damaged through the fault of another and legal recourse is sought, the judicial process essentially strives to restore the owner of the damaged property, as nearly as possible, to his state immediately prior to the damaging occurrence."[19] Consequently, "where the thing damaged can be adequately repaired, the proper measure of damages is the cost of restoration."[20] If it is not practical to repair the damaged property, the injured party may be restored to his prior position by an award of the difference in the value of the property before the damage was inflicted and immediately afterwards.[21] When this figure cannot be determined with a reasonable degree of certainty, the damage award should be based upon the cost to replace the damaged property, minus depreciation.[22] The injured party may also recover expenses incurred as a result of the damage.[23]

When an oil well is damaged or destroyed, this Court must consider these alternative models of damages to put the injured person in the same position as before the damage occurred. When the damaged well can be repaired, the proper model of damages is the cost to repair the well. For example, in *JFD Inc. v. Shell Oil Co.*, the court

---

[19] *JFD, Inc. v. Shell Oil Co.*, No. 79-898, 1988 WL 40260, at *9 (E.D. La. Apr. 27, 1988) (citing *Coon v. Placid Oil Co.*, 493 So. 2d 1236, 1240 (La. App. 3 Cir. 1986); *Petrol Indus., Inc., v. Gearhart–Owen Indus., Inc.*, 424 So. 2d 1059, 1062 (La. App. 2 Cir. 1982)).
[20] *Petrol*, 424 So. 2d at 1062.
[21] *Petrol*, 424 So. 2d at 1062.
[22] *Petrol*, 424 So. 2d at 1062 (awarding cost to drill a new well, minus depreciation); *Helmer Directional Drilling, Inc. v. Dexco, Inc.*, 94-1272 (La. App. 4 Cir. 3/29/95), 653 So. 2d 1245, 1250, writ granted, 95-1537 (La. 11/13/95), 662 So. 2d 452 (affirming award of cost to drill new well); *Schexneider v. United Geophysical Corp.*, 385 So.2d 533, 536 (La. App. 3 Cir. 1980) (awarding cost to drill new well); *Basin Exploration, Inc. v. Tidewater*, 353 F. Supp. 2d 662, 671 (E.D. La. Mar. 10, 2004) (awarding cost of replacement well). *See also Atex Supply Inc. v. Sesco Prod. Co.*, 736 S.W. 2d 914, 917 (Tex. App. 1987).
[23] *Helmer*, 653 So. 2d at 1250 (awarding costs associated with drilling in wrong direction); *Schexneider*, 385 So.2d at 536 (upholding an award of costs for additional fuel and oil consumed by the well as a result of the well's damaged condition); *Petrol*, 424 So. 2d at 1062 (upholding an award of additional expenses incurred as a result of the damage).

awarded the plaintiff workover costs for repairs related to the damaging event.[24] When the well cannot be repaired or is destroyed, the appropriate damage model is the difference in value of the well before and after the accident. For example, in *Atex Pipe & Supply, Inc. v. Sesco Production Co.*, the court found the proper measure of damage for a destroyed well was "the difference in the reasonable cash market value of the well, as equipped, immediately before and immediately after the tubing collapse."[25] When the value of the well before and after the accident cannot be calculated, or is too speculative, the appropriate damage model is the cost of a replacement well, minus depreciation. For example, in *Petrol Industries, Inc. v. Gearhart-Owen Industries, Inc.*, the court upheld an award of damages for the cost of a replacement well, less depreciation.[26]

## II. Loss of Reserves and Loss of Production Revenue Are Not Recoverable Damages for Loss of a Well

The Court has found no Louisiana case, and the Plaintiff has cited none, in which there was a complete loss of the well and the court awarded the amount of revenue the well would have generated as damages.[27] In this case, Oracle seeks damages as a result of the "complete loss of the well."[28] Because the revenue the well would have produced is not a proper measure of damages, any testimony regarding this amount is irrelevant.[29] As a result, Mr. McGowen will not be permitted to testify regarding the net revenue of the well, had it commenced production.

---

[24] *JFD, Inc. v. Shell Oil Co.*, No. 79-898, 1988 WL 40260, at *5 (E.D. La. Apr. 27, 1988).
[25] *Atex Supply Inc. v. Sesco Prod. Co.*, 736 S.W. 2d 914, 917 (Tex. App. 1987).
[26] *Petrol Indus., Inc. v. Gearhart-Owen Indus., Inc.*, 424 So. 2d 1059, 1062 (La. App. 2 Cir. 1982); *see also Schexneider*, 385 So.2d at 536 (awarding cost to replace well, less depreciation when there was no evidence of the value of the property prior to and after the damage).
[27] In fact, in *Atex Pipe & Supply, Inc. v. Sesco Production Co.*, the Texas Court of Appeals remanded for a new trial after the trial court instructed the jury to consider the loss of production when calculating damages. 736 S.W. 2d 914, 917 (Tex. App. 1987).
[28] R. Doc. 1-7 at ¶ 30.
[29] FED. R. EVID. 401.

Further, courts do not allow the recovery of lost reserves or lost revenue from an oil well because any estimate of these amounts is too speculative to substantiate an award of damages. Under Louisiana law, damages must be proven with certainty.[30] "Proof to substantiate a claim for damages must be clear and definite and not subject to conjecture."[31] Courts cannot award speculative damages.[32] As a result, proof that establishes only possibility, speculation or unsupported probability does not establish a damage claim."[33]

For example, in *Coon v. Placid Oil*, the court found a damage award, based on a petroleum engineer's estimation of reservoir potentials, too speculative to uphold.[34] Similarly, in *Petrol Industries, Inc. v. Gearhart-Owen Industries, Inc.*, the court found estimates of the value of a well before the accident, calculated on the basis of future anticipated profits, and the value of the well after the accident were too speculative to serve as a basis for the damage award.[35]

In its findings of fact and conclusions of law in *JFD, Inc. v. Shell Oil Co.*, the court expressly found "[r]eserve estimates depend on the particular formula used to calculate the reservoir, and such formulae involve a great deal of uncertainty, fluctuation and are never 100% accurate . . . reserve estimates are by definition speculative in nature and

---

[30] *Town of Gramercy v. Blue Water Shipping Servs.*, No. 07-2655, 2009 WL 799709, at *2 (E.D. La. Mar. 24, 2009) (citing *Clement v. La. Irrigation & Mill Co.*, 56 So. 902 (1911); *Smith v. White*, 411 So.2d 731 (La. App. 3 Cir. 1982); *Coon v. Placid Oil Co.*, 493 So.2d 1236, 1240 (La. App 1986)).
[31] *Todd v. State Through Dep't of Soc. Servs., Office of Cmty. Servs.*, 96-3090 (La. 9/9/97), 699 So. 2d 35, 43 (citing *Zion v. Stockfieth*, 616 So.2d 1373 (La. App. 5 Cir.)).
[32] *Overland Sols., Inc. v. Christensen*, No. 06-53, 2009 WL 2588232, at *4 (M.D. La. Aug. 21, 2009) (citing *Arco Oil & Gas Co., a Div. of Atlantic Richfield Co. v. DeShazer*, 649 So.2d 444, 448 (La. App. 3 Cir. 1994); *Coon*, 493 So.2d 1236).
[33] *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 937 (5th Cir. 2006) (citing *Coon v. Placid Oil Co.*, 493 So.2d 1236 (La. App. 3 Cir. 1986)).
[34] *Coon v. Placid Oil*, 493 So. 2d 1236, 1241-44 (La. App. 3 Cir. 1986).
[35] *Petrol*, 424 So. 2d at 1062.

subject to numerous variables which would affect the reserve calculations."[36] In *JFD*, one expert testified that reserve estimates are by their very nature theoretical formulae tempered by historical well data and that any reserve calculation is speculative in nature; another expert testified that the determination of recoverable reserves changes every time that the calculation is made.[37] As a result, the court found "the loss of underground reserves . . . cannot be accurately calculated and compensated by money damages."[38]

Courts have excluded, as too speculative, expert testimony on the economic potential of a well. For example, in *Texocan Operating, Inc. v. Hess Corp.*, the court excluded as speculative expert testimony regarding the "loss value" to the plaintiff based on the expert's "forecast" of future production of the well.[39] The court expressed concern that, in calculating the loss value, the expert used operating expenses provided by the plaintiffs without conducting any independent verification of the expenses.[40]

Mr. McGowen's opinion regarding the net production revenue of the well, had it commenced production, is likewise too speculative to support a damages award and is too speculative to be reliable and admissible. In calculating the net production revenue, Mr. McGowen makes numerous assumptions and estimates, including (a) using a structure map prepared for a unit application, (b) *assuming* the oil-water contact is the midpoint between the LKO (-13,912) and the HKW (-14,024) or -13,968, (c) *estimating* the total oil in place, (d) *estimating* the oil recovery *assuming* a partial water drive, (e) *estimating* the ultimate recovery *assuming* a 70% recovery of the solution-gas-place, (f) *estimating* the

---

[36] *JFD, Inc. v. Shell Oil Co.*, No. 79-898, 1988 WL 40260, at *8 (E.D. La. Apr. 27, 1988).
[37] *Id.*
[38] *Id.*
[39] *Texocan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 910-12 (S.D. Tex. Jan. 21, 2015).
[40] *Id.* at 911.

7

operating expenses.[41] Additionally, Mr. McGowen does not independently verify the operating expenses but relies on information provided by Veazey and Associates, Inc.[42] The speculative nature of Mr. McGowen's estimate is further evidenced by his acknowledgement that the well never produced, which further reduces the verified information billed to him.[43] Mr. McGowen will not be permitted to testify regarding the net revenue of the well, had it commenced production, because this testimony is irrelevant for two reasons: (1) it does not reflect the correct damages model and (2) it is speculative.

## CONCLUSION

**IT IS ORDERED** that the Motion *in Limine*[44] seeking to exclude the testimony of Robert McGowen is **GRANTED**.

**New Orleans, Louisiana on this 24th day of May, 2019.**

                                                              _____Susie Morgan_____
                                                                            **SUSIE MORGAN**
                                                              **UNITED STATES DISTRICT JUDGE**

---

[41] R. Doc. 20-5 at 3.
[42] R. Doc. 20-5 at 3; *see also* R. Doc. 20-6 at 4.
[43] R. Doc. 20-5 at 1.
[44] R. Doc. 20.